NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff,<br><br>    Plaintiff,<br><br>v.<br><br>MISTRAL (SPC),<br><br>    Defendant. | Adv. Pro. No. 12-01273 (CGM) |

**A P P E A R A N C E S :**

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Windels Marz Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
By: Howard L. Simon
   Robert J. Luddy
   Kim M. Longo
   Alex Jonatowski

*Attorneys for Defendant, Mistral (SPC)*
O'Melveny & Meyers LLP
7 Times Square
New York, NY 10036
By:    William J. Sushon
       Daniel S. Shamah
       Kayla N. Haran

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Mistral (SPC), ("Mistral" or "Defendant"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. Defendant seeks dismissal for failure to plausibly allege that it received BLMIS property and has raised the good faith defense.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has not been contested by Defendant.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme operated by Bernard L. Madoff ("Madoff") and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178-83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on April 5, 2012. (Compl. ECF[1]No. 1).  Via the amended complaint ("Complaint"), the Trustee seeks to recover $3.2 million in subsequent transfers made to Mistral.  (Am. Compl. ¶¶ 1–2, 156, ECF No. 113).  The subsequent transfers were derived from investments with BLMIS made by Rye Select Broad Market Portfolio Limited ("Rye Portfolio Ltd").  (*Id.* ¶¶ 2, 156).  Defendant is alleged to have knowingly directed funds to be invested with and redeemed from Rye Portfolio Ltd.  (*Id.* ¶ 66).

Defendant Mistral is a hedge fund organized under the laws of the Cayman Islands. (Am. Compl. ¶¶ 4, 50, ECF No. 113).  Mistral is entirely owned and managed by the non-party Credit Suisse Group AG.  (*Id.* ¶ 4).  It has no employees of its own, and its only operations were investments in BLMIS feeder funds and other hedge funds.  (*Id.* ¶ 52).  Defendant was operated by the Credit Suisse Manager from New York.  (*Id.* ¶ 54). Its investments were linked to the Credit Suisse/Tremont Hedge Fund Index ("CS/Tremont Index").  (*Id.*).  The CS/Tremont Index was formed in 1999 and owned by a partnership of Tremont Group Holdings ("Tremont Group")

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01273 (CGM).

and Credit Suisse Group AG ("CS Group") and subsidiaries ("Credit Suisse").  (*Id.* ¶ 53).  Mistral's purpose was to serve as a vehicle for investments in hedge funds tracked by the CS/Tremont Index.  (*Id.* ¶ 54).

The Tremont Group created, owned, managed, and operated the Rye feeder funds out of Rye, New York, including Rye Portfolio Ltd.  (*Id.* ¶ 66).  Rye Portfolio Ltd is considered a "feeder fund" of BLMIS because the intention of the fund was to invest in BLMIS.  (*Id.* ¶¶ 2, 66).  The Tremont Group was Defendant's primary contact with Rye Portfolio Ltd.  (*Id.* ¶ 69).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Rye Portfolio Ltd and related defendants that were managed by Tremont to avoid and recover fraudulent transfers of customer property in the amount of approximately $2.1 billion.  (*Id.* ¶¶ 78, 150).  In 2011, the Trustee settled with the certain Tremont-related defendants, including Rye Portfolio Ltd.  (*Id.* ¶¶ 80, 151).  As part of the settlement, the defendants consented to a judgment in the amount of $1.025 billion.  (Order, Adv No. 10-05310-brl, ECF No. 38).

The Trustee alleges that BLMIS made initial transfers to Rye Portfolio Ltd of approximately $620 million, including $609 million made within six years of the filing date and $350 million made within two years.  (*Id.* ¶¶ 152–53).  The Trustee has alleged that based its investigations, at least $3,200,000 transferred from BLMIS to Rye Portfolio Ltd was subsequently transferred to Mistral.  (*Id.* ¶ 156).

In its motion to dismiss, Mistral argues that the Complaint fails to allege that it received BLMIS customer property and that it is entitled to the good-faith defense.  The Trustee opposes the motion to dismiss.

**Discussion**

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

Count one of the Complaint seeks recovery of subsequent transfers under 11 U.S.C. § 550(a). (Am. Compl. 161–64, ECF No. 113). Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013).

The Trustee is seeking to recover $3.2 million of subsequent transfers made to Defendant by Rye Portfolio Ltd. (Am. Compl. ¶ 2, ECF No. 113). The Court entered an order on September 22, 2011, approving a settlement of $1.025 billion with Rye Portfolio Ltd and other Tremont-associated defendants brought pursuant to 11 U.S.C. §§ 544, 547, 548, 550, 551, SIPA § 78fff-2(c)(3), and the New York Fraudulent Conveyance Act. (Order, Adv Pro. 10-05310-brl, ECF No. 38).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Rye Portfolio Ltd is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *Id.*

The Trustee pleaded the avoidability of the initial transfer from BLMIS to Rye Portfolio Ltd by adopting by reference the entirety of the complaint filed against the Tremont Defendants in adversary proceeding 10-05310 (BRL) (the "Tremont Complaint") and through allegations in

the Complaint. (Am. Compl. ¶¶ 78, 159, ECF No. 113). Mistral argues that the Trustee has failed to plausibly allege that the payments made by Rye Portfolio Ltd to Defendant were BLMIS customer property. (Def.'s Mem. 6, ECF No. 119).

**BLMIS Customer Property**

The Trustee has pleaded that, based on its investigations to date, at least $3.2 million of the $620 million initially transferred from BLMIS to Rye Portfolio Ltd was subsequently transferred by Rye Portfolio Ltd to Defendant. (Am. Compl. ¶¶ 152, 156, ECF No. 113).

Exhibit C to the Complaint provides Defendant with the exact date and amount of each transfer the Trustee is seeking to recover. (*Id.* Ex. C). The exhibits attached to the Complaint provide Defendant with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

Mistral argues that the Trustee must trace all amounts from BLMIS to Rye Portfolio Ltd, tying each subsequent transfer to an initial transfer. (Def's Mem. 7, ECF No. 119). This is the same argument that the Court has consistently rejected. The Trustee is not required to allege a "dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

In order to determine how Rye Portfolio Ltd spent the funds it received from BLMIS, this Court would need review financial documents in order to trace the monies to all of Rye Portfolio Ltd's principals, insiders, creditors, and customers. Undoubtedly, the Court will trace and calculate how Rye Portfolio Ltd spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation. At this stage, the Trustee need only assert allegations that make it seem plausible that the Defendant received BLMIS monies.

The Tremont Complaint, which is incorporated by reference into this Complaint, alleges that the Rye Funds were "close to 100% invested with BLMIS." (Tremont Compl. ¶ 8, Adv Pro. No. 10-05310, ECF No. 4). "[V]irtually 100% of the monies invested in the Portfolio Limited Fund were given to Madoff and deposited with BLMIS." (*Id.* ¶ 39). The Complaint further alleges that Rye Portfolio Ltd "invested all or substantially all of its assets into the BLMIS Ponzi scheme." (Am. Compl. ¶ 159, ECF No. 113).

The Complaint plausibly alleges that Rye Portfolio Ltd did not have any assets that were not customer property. In this case, the Trustee is seeking approximately $3.2 million, which easily could come from the over $600 million Rye Portfolio Ltd received from BLMIS. If the Court were to accept Defendant's argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent transfer claims in all of the adversary proceedings since the Court has no idea which transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not. The Court is simply not willing to have such a trial at this stage of litigation. Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendant received customer property because Rye Portfolio Ltd did not have other property to give. The calculation of Rye Portfolio Ltd's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**Good Faith**

Defendant has raised the "Good Faith" defense. (Def.'s Mem. 7, ECF No. 119). "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the

complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (cleaned up). A "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense." *Id.*

The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022),] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'" *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022). And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ." *Id.* (internal quotation omitted).

The burden of proving good faith falls squarely on Defendant, and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry.

Mistral argues that it received redemption payments "for [v]alue," because "Mistral surrendered interests in Rye in exchange for redemption payments." (Def.'s Mem. 8, ECF No. 119).

The "value" that a subsequent transferee must provide is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005).  In addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than what the transferor received.

Defendant argues that the payments it received were given in exchange for an interest in Rye Portfolio Ltd.  If Defendant knew at the time it redeemed its shares that the shares were worthless, then it did not receive the subsequent transfer funds "for value" as is required under § 550.  *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), aff'd sub nom. *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust.").  The Complaint alleges that "Rye Portfolio Limited was insolvent when it made the Transfers to Defendant upon redemption of its interests."  (Am. Compl. ¶ 159, ECF No. 113).  It has not yet been determined whether Defendant knew if the shares it redeemed from Rye Portfolio Ltd. had value.  The Complaint contains no mention of the Defendant exchanging shares for consideration. (*Id.* ¶¶ 150–60).  Therefore, the "value" defense is not asserted on the face of the Complaint.

Defendant argues that "a diligent inquiry would not have revealed Madoff's fraud, establishing Mistral's good faith."  (Def's Mem. 9, ECF No. 119).  Good faith is linked with whether one had knowledge of the voidability of the transfer.  *Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."),

*cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022). Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny Defendant's motion on this element. Additionally, § 550(b)(1) provides a defense to recovery making lack of knowledge Defendant's burden to plead and prove. It is a fact-intensive inquiry that requires a three-step inquiry asking what the defendant subjectively knew; "whether these facts put [the defendant] on inquiry notice of the fraudulent purpose behind a transaction— that is, whether the facts the transferee knew would have led a reasonable person in the [the] position to conduct further inquiry into a debtor-transferor's possible fraud[;]" and finally whether "diligent inquiry by [the defendant] would have discovered the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

## **Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



Dated: January 24, 2023
Poughkeepsie, New York

/s/ Cecelia G. Morris
_____
Hon. Cecelia G. Morris
U.S. Bankruptcy Judge